**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **EUGENE GILYARD, *et al.*** | : **CIVIL ACTION** |
| | : |
| **v.** | : **NO. 16-2986** |
| | : |
| **DENNIS DUSAK, *et al.*** | : |

## MEMORANDUM

**KEARNEY, J.**                                                                                          **May 8, 2018**

Eugene Gilyard and Lance Felder allege Philadelphia and three of its detectives maliciously prosecuted them for a 1995 murder resulting in a 1998 guilty verdict followed by a life sentence for a murder they did not commit. In 2014, Messrs. Gilyard and Felder obtained their freedom upon the actual murderer confessing and the Commonwealth dismissing the charges against them. Messrs. Gilyard and Felder timely sued the City and its officers for violating their constitutional rights. After we found Messrs. Gilyard and Felder may proceed to trial on a Fourth Amendment claim for malicious prosecution, they now reach for damages under the Fifth and Fourteenth Amendments based on three paragraphs in their second amended complaint alleging two detectives concealed a prosecution eyewitness' past criminal falsehood history from the defense counsel and state court. Even if we found they adequately plead these constitutional claims by inferring failure to disclose evidence to prosecutors as is currently the law, we must grant the detectives' motion for judgment as the detectives did not have the benefit of clearly established law requiring them to turn over criminal histories of eyewitnesses in 1997 and 1998. We do not measure the detectives' obligations to turn over the eyewitness's criminal history to prosecutors based on 2018 law and must afford the two detectives qualified immunity for 1997 and 1998 actions they could not have known violated constitutional rights at the time.

## I.    Alleged Facts

On August 31, 1995, someone fatally shot Thomas Keal in Philadelphia.[1]   Philadelphia Police officers investigated the murder by speaking with a dozen people in the area at the time.[2]  Mr. Keal's daughter Tonya Keal witnessed the murder. The 1995 investigation into Mr. Keal's murder ended without a suspect or an arrest.[3]

In late 1997, Detectives Dennis Dusak and John Benham re-opened the cold case and began re-investigating Mr. Keal's murder.[4]   After re-interviewing select witnesses including Ms. Keal, Detective Dusak swore an affidavit of probable cause allegedly containing fabricated evidence and evidence obtained by witness intimidation against Messrs. Gilyard and Felder.[5]  Among other evidence, the Detectives relied upon Tonya Keal's 1997 identification of Messrs. Felder and Gilyard after she could not do so in 1995.[6]

The District Attorney tried Messrs. Felder and Gilyard in the Philadelphia Court of Common Pleas.[7]   On December 10, 1998, the jury found Messrs. Felder and Gilyard guilty of first degree murder of Mr. Keal.[8]   Four days later, the jury returned a sentence of life for both men.[9]   In 2011, while serving a life sentence for another murder conviction, Ricky Welborne *a.k.a.* "Rolex" confessed to shooting Mr. Keal on August 31, 1998. Messrs. Gilyard and Felder petitioned for relief under Pennsylvania's Post-Conviction Relief Act and the state court held numerous hearings on their petition.[10]   On October 8, 2013, Judge DeFino-Nastasi of the Philadelphia Court of Common Pleas vacated their sentences and ordered a new trial based the after-discovered evidence of Mr. Welborne's confession.[11]   On June 18, 2014, the District Attorney *nolle prossed* the charges against Messrs. Gilyard and Felder.[12]

On June 14, 2016, Messrs. Gilyard and Felder sued Detectives Dusak, Benham, and Wynn,[13] the City of Philadelphia, and Richard Neal.[14]   On May 26, 2017, Detectives Dusak,

Benham, and Wynn and the City of Philadelphia moved for summary judgment based on the allegations in Messrs. Gilyard and Felder's complaint. On the same day, Messrs. Gilyard and Felder moved to amend their complaint to conform to the evidence.[15]

The relevant amended allegations are Detectives Dusak and Benham violated their constitutional rights by intimidating witnesses and falsifying testimony to identify Messrs. Gilyard and Felder, refusing to record interviews with and follow up on leads from witnesses who identified suspects other than them, and failing to include exculpatory evidence in the affidavit of probable cause.

Messrs. Gilyard and Felder also allege Detective Dusak and Benham did a background check on Ms. Keal and learned she had been "convicted of a crime of falsehood" also called "*crimen falsi*."[16] They further allege Detectives Dusak and Benham "did not disclose" Ms. Keal's conviction for *crimen falsi* to Messrs. Gilyard's and Felder's defense counsel or "any court."[17] Messrs. Gilyard and Felder do not allege the Detectives concealed this information from the prosecutors.

On June 13, 2017, we held oral argument to address pending motions, including the motion for summary judgment and Messrs. Gilyard and Felder's motion to amend their complaint, motion for sanctions and spoliation, and motion for a preliminary injunction. On June 14, 2017, we granted Messrs. Gilyard and Felder's unopposed motion to amend "solely to conform to the adduced evidence relating to a claim for declaratory relief relating to alleged unconstitutional probable cause directives and policies…"[18]

We granted in part and denied in part Messrs. Gilyard and Felder's motion for summary judgment addressing their § 1983 Fourth Amendment malicious prosecution claims against Detectives Dusak, Benham, and Wynn and *Monell* claim against the City.[19]

3

The City and the Detectives then moved in limine to preclude evidence of Messrs. Gilyard's and Felder's incarcerations because the Fourth Amendment does not apply to post-conviction seizure and the jury cannot award them damages for post-conviction injuries under the Fourth Amendment.[20] In effect, Messrs. Gilyard and Felder may recover for damages caused by the conviction but the jury could not award damages for the years spent in jail. Messrs. Gilyard and Felder argue the Detectives and City also violated their Fifth and Fourteenth Amendment rights, including a *Brady*[21] claim violation, and can be awarded damages until their exoneration.[22]

On July 24, 2017, eleven days before our initial long-scheduled trial date, the City and Detectives moved for judgment on the pleadings arguing Messrs. Gilyard and Felder failed to specify their Fifth and Fourteenth Amendments claims and "vaguely asserted" a *Brady* claim.[23] We denied the motion because the City and Detectives did not move "early enough not to delay trial."[24] We expressed no opinion on the merits given the imminent trial date.

The City and the Detectives appealed our denial of qualified immunity at summary judgment and our denial on the judgment of the pleadings. Before our court of appeals heard or decided the appeal, the parties stipulated the City and Detectives would withdraw their interlocutory appeal.[25] The parties requested we vacate our denial on the City and Detectives' judgment on the pleadings on procedural grounds and instead allow the parties to fully brief the judgment on the pleadings on the Fifth and Fourteenth Amendment claims and rule substantively.[26] We agreed to these reasonable steps as we now prepare for July 2018 trial.

4

## II.    Analysis

Detectives Dusak, Benham, and the City move for judgment on pleadings arguing Messrs. Gilyard and Felder fail to properly allege a *Brady* violation and a due process violation under the Fifth and Fourteenth Amendments. They further argue, even if they alleged those claims, accepting Messrs. Gilyard and Felder allegations as true, the City and the Detectives are entitled to judgment as a matter of law. The City also moves to dismiss a possible *Monell* claim based on *Brady* violations against Messrs. Gilyard and Felder.

We held oral argument. As an initial matter, we told the parties our June 29, 2017 opinion allows Messrs. Gilyard and Felder to proceed on a *Monell* claim solely under the Fourth Amendment against the City for alleged policies, training, and supervising of officers which fail to require exculpatory evidence in an affidavit of probable cause.[27] Messrs. Gilyard and Felder did not allege, and cannot pursue at trial, a *Monell* claim based on a Fifth and Fourteenth Amendment theory.

Without waiving their arguments in briefs regarding failure to plead a *Brady* violation, the Detectives focused their oral argument on qualified immunity for the *Brady* Fifth Amendment claim based on a lack of established law in 1995-1998 on a detective's obligations to turn over witness' criminal history to prosecutors. At this stage, we assume solely for the purposes of this motion Messrs. Gilyard and Felder alleged a *Brady* violation and a Fourteenth Amendment claim.[28]

A party may move for judgment on the pleadings "[a]fter the pleadings are closed--but early enough not to delay trial..."[29] In so doing, "the moving party must show that no issues of material fact exist and that judgment should be entered in its favor as a matter of law."[30] The standard applied to motions under Rule 12(c) is the same standard as applied to motions to

dismiss under Rule 12(b)(6).[31] Rule 12(c) motion "should not be granted unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law."[32]

Detectives Dusak and Benham argue qualified immunity bars Messrs. Gilyard and Felder's *Brady* and Fourthteenth Amendment claims because their rights in question were not "clearly established at the time of the violation."[33] To allege a § 1983 civil rights violation against Detectives Dusak and Benham; Messrs. Gilyard and Felder must allege they "(1) violated [their] civil rights; and, (2) "the right in question was clearly established at the time of the violation."[34]

### A. Qualified immunity bars Messrs. Gilyard and Felder's *Brady* violation claim against Detectives Dusak and Benham.

Messrs. Gilyard and Felder argue they plead a *Brady* violation in three factual background allegations in their Second Amended Complaint. They allege Detectives Dusak and Benham possessed Ms. Keal's criminal background check and learned she had a conviction for a *crimen falsi*.[35] They further allege Detectives Dusak and Benham "did not disclose" Ms. Keal's conviction for *crimen falsi* to Messrs. Gilyard and Felder's defense counsel or "any court."[36]

We remind the parties of the present state of law requiring police officers to turn over *Brady* evidence. "*Brady* suppression occurs when the government fails to turn over evidence that is 'known only to police investigators and not to the prosecutors'" and police may be liable under *Brady* for "affirmatively conceal[ing] material evidence from the prosecutor."[37] But the issue is not what police officers know today. Instead, we must examine the clearly established law at the time of Messrs. Gilyard and Felder's arrest and trial in the end of 1997 and into 1998.

The Detectives' obligations to turn over evidence to prosecutors were not clearly established in 1997 and 1998. In 2000, two years after Detectives Dusak and Benham's alleged

6

*Brady* violation, our court of appeals noted duties under *Brady* are "affirmative[ly]" placed on the prosecutor and it "assume[d] for the purposes this appeal that investigating police officers also have an affirmative duty to disclose exculpatory evidence..."[38] This 2000 assumption in a footnote is the closest we get to the Detectives' 1997 and 1998 conduct.

Our court of appeals addressed an officer's duty under *Brady* in 2005 in *Gibson v. Superintendent*.[39] The court first noted three circuits, the Fifth Circuit in 1988, Second Circuit in 1992, and the Eleventh Circuit in 1996, recognized "police officers and other state actors may be liable under § 1983 for failing to disclose exculpatory evidence to the prosecutor" under *Brady*.[40] Our court of appeals agreed holding "[a]lthough *Brady* places the ultimate duty of disclosure on the prosecutor, it would anomalous to say that police officers are not liable when they affirmatively conceal material evidence from the prosecutor."[41]

Our court of appeals then examined whether the police officer's duty under *Brady* was clearly established in 1994, the relevant time in *Gibson*.[42] Our court of appeals noted the Supreme Court did not establish a prosecutor's duty to learn unfavorable evidence from the police officers until 1995.[43] The court then continued "[m]ore importantly, the related duty of the police to disclose information to the prosecutor was not widely addressed until later. Even in 2000, this Court was only able to *assume* that police officers 'have an affirmative duty to disclose exculpatory evidence to an accused if only by informing the prosecutor that the evidence exists.'"[44]

Based on our court of appeals holding the right is not clearly established in 2000, Messrs. Gilyard and Felder's right was not clearly established in 1998. Detectives Dusak and Benham are entitled to qualified immunity for allegedly affirmatively concealing exculpatory evidence from the prosecutor under *Brady*.

7

**B.** **Qualified immunity bars Messrs. Gilyard and Felder's Fourteenth Amendment claim against Detectives Dusak and Benham.**

Messrs. Gilyard and Felder allege Detectives Dusak and Benham violated their Fourteenth Amendment rights. They do not have a substantive due process right to be free from malicious prosecution, only the Fourth Amendment provides a malicious prosecution claim.[45] Messrs. Gilyard and Felder can only attempt to assert a Fourteenth Amendment procedural due process claim.

Messrs. Gilyard and Felder's Fourteenth Amendment procedural due process claim was not clearly established in 1998, and it not clearly established even today.

In 2014, our court of appeals addressed a Fourteenth Amendment malicious prosecution claim in *Halsey v. Pfeiffer*.[46] In *Halsey*, the exonerated man initially alleged a malicious prosecution claim under the Fourth and Fourteenth Amendments but later abandoned his Fourteenth Amendment claim.[47] Our court of appeals noted this "obviate[ed] the need" for it to decide the "viability" of a Fourteenth Amendment procedural due process claim.[48]

We studied our colleague Judge Pratter's recent helpful analysis in deciding whether a Fourteenth Amendment procedural due process claim was clearly established in 1994.[49] After examining several arguments, Judge Pratter, relying on our court of appeals' opinion in *Halsey*, held a procedural due process claim under the Fourteenth Amendment "is not (and was not at the relevant time) clearly established, meaning that the officers are entitled to qualified immunity..."[50]

We agree with Judge Pratter the right is not clearly established. To be clearly established means the contours of a Fourteenth Amendment procedural due process claim is "sufficiently clear that a reasonable official would understand that what he is doing violates that right."[51] Our court of appeals' 2014 choice to not decide the viability of a Fourteenth Amendment claim is not

8

sufficient to clearly establish the contours of the right so as to allow Detectives Dusak and Benham to be on notice their 1998 conduct violated this right.

Qualified immunity bars Messrs. Gilyard and Felder's Fourteenth Amendment due process claim because in 1998 (and today) our courts had not clearly established a citizen had a Fourteenth Amendment procedural due process right to be free from malicious prosecution.[52]

## III. Conclusion

We grant Detective Dusak, Detective Benham, and the City of Philadelphia's motion for judgment on the pleadings because qualified immunity bars any *Brady* or Fourteenth Amendment claims Messrs. Gilyard and Felder may have raised in their Second Amended Complaint. We continue to bar Messrs. Gilyard and Felder from alleging *Monell* liability against the City based on theory except whether the Philadelphia Police's policy, training, and supervising of officers as to obligations to include exculpatory evidence in an affidavit of probable cause.[53]

We also dismiss all claims against Detective William Wynn because we granted summary judgment in Detective Wynn's favor and Messrs. Gilyard and Felder do not make any new allegations against him in their Second Amended Complaint.[54]

---

[1] Second Amended Complaint, ECF Doc. No. 85, ¶ 11.

[2] *Id.* ¶ 13.

[3] *Id.* ¶ 7.

[4] *Id.* ¶¶ 7, 22.

[5] *Id.* ¶ 45.

[6] *Id.* ¶¶ 31-34.

[7] *Id.* ¶ 77.

[8] *Id.*

[9] *Id.*

[10] *Id.* ¶ 82.

[11] *Id.*

[12] *Id.* ¶ 83.

[13] Messrs. Gilyard and Felder allege after their arrest, Detective William Wynn rushed the witnesses through line-up and used unreliable line-up techniques. *See id.* ¶ 142. We dismissed Detective Wynn in our June 29, 2017 Order. ECF Doc. No. 92.

[14] We dismissed all claims against former Commissioner Richard Neal as redundant to Messrs. Gilyard and Felder's municipal liability claims against the City of Philadelphia. *See* ECF Doc. No. 19.

[15] ECF Doc No. 67.

[16] ECF Doc. No. 85, ¶ 125.

[17] *Id.* ¶ 126.

[18] ECF Doc. No. 81.

[19] ECF Doc. No. 92.

[20] ECF Doc. No. 101.

[21] *Brady v. Maryland*, 373 U.S. 83 (1963). In *Brady*, the Supreme Court held a criminal defendant's due process rights are violated when the government fails to turn over evidence favorable to the defendant.

[22] ECF Doc. No. 110.

[23] ECF Doc. No. 113 at 4.

[24] ECF Doc. No. 116.

[25] ECF Doc. No. 137.

[26] ECF Doc. No. 137.

[27] ECF Doc. No. 91 at 31 n.157.

[28] The Detectives have a valid argument Messrs. Gilyard and Felder either did not plead liability for a *Brady* violation or otherwise abandoned these claims before trial; because we find qualified immunity bars these claims and relying on the Defendants' counsel's request during oral argument, our assumption as to pleading specificity does not prejudice the Detectives.

[29] Fed. R. Civ. P. 12(c).

[30] *Collinson v. City of Philadelphia, No.*, No. 12-6114, 2015 WL 221070, at *1 (E.D. Pa. Jan. 14, 2015) (quoting *S.B. v. United of Omaha Life Ins. Co.*, No. 13–1463, 2013 WL 2915973, at *3 (E.D. Pa. 2013)).

[31] *Szczurek v. Prof'l Mgmt., Inc.*, No. 14-4790, 2014 WL 6388484, at *1 (E.D. Pa. Nov. 17, 2014).

[32] *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 271 (3d Cir. 2014) (internal quotations and citations omitted).

[33] *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011).

[34] *Id.*

[35] ECF Doc. No. 85, ¶ 125.

[36] *Id.* ¶ 126.

[37] *Thomas v. City of Phila.*, 290 F. Supp. 3d 371, 384 (E.D. Pa. 2018) (quoting *Youngblood v. West Virginia*, 547 U.S. 867, 870 (2006) (per curiam)); *Kyles v. Whitley*, 514 U.S. 419, 438 (1995)); *Gibson v. Superintendent*, 411 F.3d 427, 443 (3d Cir. 2005), *overruled on other grounds by Dique v. N.J. State Police*, 603 F.3d 181, 183 (3d Cir. 2010)).

[38] *Smith v. Holtz*, 210 F.3d 186, 197 n.14 (3d Cir. 2000).

[39] *Gibson*, 411 F.3d at 443.

[40] *Id.* (citing *McMillian v. Johnson,* 88 F.3d 1554, 1567 (11th Cir.1996), amended 101 F.3d 1363 (11th Cir. 1996); *Walker v. City of New York,* 974 F.2d 293, 299 (2d Cir. 1992); *Geter v. Fortenberry*, 849 F.2d 1550, 1559 (5th Cir. 1988)).

[41] *Id.*

[42] *Id.*

[43] *Id.* (citing *Kyles*, 514 U.S. at 438 ("[T]he individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including police.").

[44] *Id.* (citing *Smith*, 210 F.3d 186, 197 n.14).

[45] *Thomas*, 290 F. Supp. 3d at 380 (citing *Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("[I]t is the Fourth Amendment, and not substantive due process, under which [a malicious prosecution] claim must be judged.").

[46] 750 F.3d 273, 290 n.14 (3d Cir. 2014).

[47] *Id.*

[48] *Id.*

[49] *See Thomas*, 290 F. Supp. 3d. at 380.

[50] *Id.* (citing *Halsey*, 750 F.3d at 290 n.14).

[51] *Karns v. Shanahan*, 879 F.3d 504, 520 (3d Cir. 2018) (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).

[52] *See Thomas*, 290 F. Supp. 3d at 380 (citing *Halsey*, 750 F.3d at 290 n.14) ("The procedural due process right against malicious prosecution is not clearly established. The Supreme Court has not yet articulated such a right. And the Third Circuit Court of Appeals stopped short of deciding the right's "viability" in 2014, let alone in the early 1990s when Mr. Thomas interacted with the defendants.").

[53] ECF Doc. No. 91 at 31 n.157.

[54] ECF Doc. No. 92.